Ingalls *v.* Bulkley.

DARIUS INGALLS, Appellant, *v.* ARISTARCHUS BULKLEY, Appellee.

APPEAL FROM MORGAN.

In replevin, the plea of *non detinet* admits the right of property to be in the plaintiff, and only puts in issue the detention by the defendant.

A party holding property, which he refuses to deliver on demand made, because he doubts the authority of the person making the demand, must place his refusal distinctly upon that ground.

If the refusal to deliver is placed upon other grounds, it furnishes presumptive evidence of conversion.

The authority of the person making a demand may be rightfully questioned, and if authority is not furnished, a refusal to deliver the property will not establish an unlawful detention.

The effect of an admission is a proper question for the consideration of a jury.

THIS cause was heard before WOODSON, Judge, at the March term, 1853, of the Morgan Circuit Court.

M. McCONNEL, for appellant.

D. A. SMITH, for appellee.

TREAT, C. J. This was an action of replevin, brought by Bulkley against Ingalls, to recover the possession of a horse. The declaration was in the *detinet* only. Plea, *non detinet*. A witness testified, that the defendant told him some time after the suit was commenced, that the plaintiff first sent his negro boy for the horse; that he afterwards sent Whittle for the horse, and then the sheriff; that he refused to let the negro or Whittle have the horse; that the plaintiff might have had the horse if he had demanded him in person and paid the damages, but he was afraid to come after his horse. It was proved that the negro and Whittle were minors, and absent from the country at the time of the trial. The court gave the following instructions at the request of the plaintiff. 1. " The ownership of the horse is not in question in this case, and the plaintiff is not bound to prove that the horse in question was his property. 2. If the jury believe from the evidence, that the plaintiff demanded the horse before the commencement of the suit, and they shall further believe that the defendant knew, or did not have reasonable grounds to doubt, that the persons who demanded the horse were sent and authorized by the plaintiff to ·

make the demand and receive the horse, they will find for the plaintiff." The court refused to give the following instructions asked by the defendant. " 1. If the jury believe from the evidence that the horse in controversy was found trespassing on the defendant's field, and he took him out of the field and put him up to prevent the trespass, and thus had him in his possession, then this is not such a detention of the horse as to justify a verdict in this case for the plaintiff; unless the plaintiff has proven to the satisfaction of the jury that he demanded of the defendant the horse in person, or by some responsible agent known to the defendant to be such, before the commencement of the suit, and the defendant unqualifiedly refused to give him up. 2. To enable the plaintiff to recover in the case, he must prove to the satisfaction of the jury that he was, at the time the horse was detained, the owner thereof, and had a right to the possession. 3. The admission of the defendant long after the horse was demanded, that the plaintiff had sent the negro boy and the boy Whittle for the horse, is not of itself evidence that he knew that the boys had authority from the plaintiff to demand the horse." The jury found the issue for the plaintiff, and the court overruled a motion for a new trial.

1. The plaintiff was not bound to show title to the horse. The plea of *non detinet* admitted the right of property to be in the plaintiff, and it only put in issue the detention by the defendant. The cases of Anderson *v.* Talcott, 1 Gilman, 365, and Vose *v.* Hart, 12 Illinois, 378, are conclusive of the question. The court, therefore, committed no error, either in giving the plaintiff's first instruction, or in refusing the defendant's second instruction.

2. The defendant had no cause to complain of the plaintiff's second instruction. It was as favorable to him as the law and facts would warrant. He was clearly in the fault in refusing to surrender the horse to the boys, if he knew at the time, or had good reason to know, that they were the agents of the plaintiff, especially as he did not place his refusal on the ground of a want of authority on their part. If there was any good reason to doubt their authority to make the demand and receive the horse, he should have put his refusal distinctly upon that ground. Such a refusal would not be sufficient evidence either of a conversion, or an unlawful detention of the property. It would compel the agents to produce their authority, in order to put him in the wrong. But in the case of an unqualified refusal, like the one proved in this case, it is enough to show on the trial, that the property was demanded by the owner in person, or through an authorized agent. This principle is well settled

by authority. It was said by Tilghman, C. J., in Jacoby *v.* Laupatt, 6 Sergeant & Rawle, 300 : " If one is in possession of goods which he has found and does not claim, and a demand being made by the owner, the possessor answers that he is not satisfied of that person being the owner, but he is ready to deliver the goods on receiving reasonable proof of ownership, this is not such a denial as will warrant the inference of a conversion. On the contrary, it is such an answer as a prudent man, consulting the interest of the owner, ought to give. So if one who calls himself the agent of the owner, demands the goods, and the possessor answers that he cannot deliver them until he receives proof that he is really the agent, no conversion can be inferred, because the answer shows nothing like an intent to convert, but only a design to preserve the goods for the use of the owner." Story, J., says, in Watt *v.* Potter, 2 Mason, 77 : " Where a demand is made by an agent, and the party refuses to deliver to the agent, either because he has no authority, or declines to produce it, such a refusal, under such circumstances, is not even evidence of a conversion, for every person in possession of property has a right to retain it, until it is demanded by some person having, and if required, producing competent authority to demand it. But if the refusal do not turn upon the supposed want of authority, if the party waives any inquiry into the authority, or admits its sufficiency, and puts his refusal upon another distinct ground, which cannot in point of law be supported, then the refusal under such circumstances, is presumptive evidence of a conversion." It was held in Holbrook *v.* Wight, 24 Wendell, 169, where the partner of a bailee refused to deliver goods to the owner, saying that he did not feel authorized to deliver them in the absence of his partner, that the bailee in an action of replevin brought against him for the goods, could not object that the demandant did not exhibit the evidence of his title; that if that was the true reason for the non-delivery, the partner should have said so, and if the refusal had been made in good faith, the defendant would have been protected. The cases of St. John *v.* O'Connell, 7 Porter, 466, and Zachary *v.* Pace, 4 English, 212, sustain the same principle. It was also recognized by this court in Ingalls *v.* Bulkley, 13 Illinois, 315.

3. There were two good objections to the defendant's first instruction. The first part had no application to the case, and was therefore calculated to embarrass rather than aid the jury. There was no evidence tending to show that the defendant found the horse trespassing on his close, and took him up to prevent further injury thereto. The latter part was objection-

able for the reason already given. The fact that the defendant may not have known that the boys had authority from the plaintiff to demand the horse, did not justify an unqualified refusal to deliver him. If he had questioned their authority, it might have been produced. If he entertained any doubt about their right to act for the plaintiff, he should have put his refusal upon that ground, and then the refusal would not have established an unlawful detention.

4. The defendant's third instruction was rightly refused. The effect of the admissions was peculiarly a question for the consideration of the jury. It was for them to determine from all of the declarations, whether the plaintiff had authorized the boys to demand the horse, and whether the defendant was at the time aware of that authority. It was competent for them to infer from these admissions, that the defendant knew, or had good reason to know, that the boys were the agents of the plaintiff. At all events, that was a matter for the jury to decide, and not the court.

5. The court was right in refusing to grant a new trial. The plea admitted the horse to be the property of the plaintiff, and he had only to prove the detention. The testimony was sufficient to warrant the conclusion, that the defendant unlawfully detained the horse from the plaintiff. He distinctly admitted that the horse had been twice demanded by persons sent by the plaintiff, and that he as often refused to surrender him. As he failed to state that he put his refusal on the ground of a want of authority in those persons to make the demand, or on any other ground that would justify him in detaining the horse, the jury might well conclude that the refusal was positive and unqualified ; such a refusal as would be sufficient evidence to maintain trover or replevin.

The judgment must be affirmed.

*Judgment affirmed.*